## NEUBERGER v. ROBBINS.

No. 2032. Decided January 19, 1910 (106 Pac. 933).

1. TRIAL—TRIAL BY COURT—ISSUES—FINDINGS. A finding entirely outside of the issues is erroneous and cannot be upheld. (Page 203.)

2. SALES—ACTION FOR UNPAID PRICE—ISSUES—FINDINGS. Whre a seller sued for the balance due on a contract on the theory that he had performed the contract binding him to sell and deliver the amount of wheat he then had on hand, and the undisputed evidence showed that he had on hand two thousand one hundred and sixty-three bushels, and that he delivered only one thousand one hundred forty-two and one-half bushels, a finding that the seller had fully performed his part of the contract was unauthorized. (Page 203.)

3. CONTRACTS—STIPULATIONS—WAIVER. A waiver of performance of stipulations of a contract must be pleaded to be available. (Page 203.)

Appeal from District Court, First District; *Hon. W. W. Maughan,* Judge.

Action by F. A. Neuberger against David Robbins, doing business under the firm name of David Robbins & Company.

Judgment for plaintiff. Defendant appeals.

REVERSED, WITH DIRECTIONS TO GRANT A NEW TRIAL.

*Nebeker, Hart & Nebeker* for appellant.

*A. A. Law* for respondent.

McCARTY, J.

This appeal is from a judgment rendered in the district court of Cache County, Utah, in favor of plaintiff and for the sum of $176.73. The facts and circumstances over which the controversy arose are as follows: On or about September 1, 1907, the defendant, who, under the name of David Robbins & Co., at Salt Lake City, Utah, was engaged in business buying and selling farm products, through his agent, M. F. Rigby, contracted with plaintiff and several other parties who were engaged in farming in Box Elder County, Utah, for the purchase of their wheat. Defendant, at the time the contracts were made, paid plaintiff one hundred dollars on the purchase price of the wheat, and received from him the following receipt, which contains the terms and conditions upon which plaintiff agreed to dispose of his wheat to defendant: "September 1, 1907. Received from David Robbins & Company, of Salt Lake City, one hundred dollars in part payment of three thousand bushels number 1 white milling wheat at sixty-four cents per bushel, sacked, to be delivered f. o. b. cars at Kolmer, on October 15, 1907, balance of payment to be made on delivery of said wheat. F. A. Neuberger. (This contract not transferable.)" Immediately after the contracts referred to were entered into, the market price of wheat advanced from sixty-four cents to sixty-eight cents per bushel, and plaintiff became dissatisfied

with the bargain he had made with defendant for the sale of his wheat, and, on September 18th, wrote to Mr. Rigby, defendant's agent, and informed him that neither he, the plaintiff, nor the other farmers who had contracted to sell their grain for sixty-four cents per bushel would deliver it at that price. In the course of the letter, he says: "They are not at all satisfied with the deal, and I myself . . . do not feel contented. . . . I am instructed by them to notify you positively that you cannot have this grain unless you pay them the regular market price. . . . If you want to pay the right and satisfactory price, you can have the grain; if not, the contracts will not be honored and the grain will not be furnished." On September 23d, he wrote direct to the defendant, and, in the course of his letter, stated: "Now, gentlemen, we will just give you this proposition, that if you want our wheat you will pay us as much as others are paying; if not, we cannot accommodate you, and any amounts you have advanced will be promptly returned to you with interest."

Some of the farmers who were interested with plaintiff in the matter were called as witnesses, and denied that they had authorized plaintiff to write to defendant in their behalf. This, however, is unimportant, as they are not parties to the suit. In response to the letters written by plaintiff advising defendant that he would not deliver any wheat for the price specified in the contract, defendant sent his agent, Mr. Rigby, to meet with plaintiff and the other farmers who were dissatisfied with their contracts. Mr. Rigby accordingly met with the parties who were dissatisfied and agreed to pay them sixty-eight cents instead of sixty-four cents per bushel for their wheat. Plaintiff was not present in person, but was represented by his son, J. J. Neuberger, who had charge of the farm upon which the grain in question was raised. There seems to be some conflict in the evidence as to what was said upon that occasion respecting the amount of grain plaintiff should deliver under the new or modified contract. O. J. Norr, a witness for plaintiff, testified in part, as follows: "Mr. Rigby said on account of us not being satisfied

he came out to make other arrangements with us." This testimony is not denied. The witness further testified: "I remarked to Mr. Rigby that . . . I didn't see how we could furnish the amount we agreed upon in the first contract, . . . and he said as far as he was concerned that would not make so much difference, 'just so we get what you have to spare. That is all we look for.'" In answer to the question, "Did you hear Mr. Neuberger say anything with reference to the amount of wheat that he would agree to sell and deliver?" the witness replied: "No, sir; he didn't state any amount." Several other witnesses testified to the same thing with respect to the amount of wheat that was to be delivered. J. J. Neuberger was called as a witness for plaintiff and testified that there were 2163 bushels of wheat raised and threshed on his father's (the plaintiff's) farm in 1907. He was questioned by plaintiff's counsel in reference to the conversation he had with Rigby at the time it is alleged a new contract was entered into for the sale of the wheat raised on plaintiff's farm, and testified as follows: "Q. What was said with reference to the quantity of wheat to be sold and delivered? A. Mr. Rigby asked me how much grain I could deliver ,and I told him 2163, and he says all right. Q. What was said by you with reference to the amount that you would sell of your faither's wheat? A. I told him I would deliver all I could posibly spare." This and other testimony of similar import was denied by Rigby, who testified that plaintiff sold him 3000 bushels of wheat and that he expected him to deliver that amount. He said: "That was the understanding that I had. I supposed that he was going to thresh 3000 bushels." The record shows that of the 2163 bushels of wheat raised on the farm only 1142½ bushels were delivered by plaintiff under the contract. Defendant paid plaintiff $600 on the wheat delivered, leaving unpaid a balance of $176.73 of the contract price. Defendant refused to pay this alleged balance, and plaintiff began this action to recover from defendant $176.73, with interest thereon from November 1, 1907.

The complaint is in the usual form for breach of contracts of this character. Defendant answered, setting up the terms and conditions of the contract as first entered into between him and plaintiff, and further alleged as a counterclaim "that thereafter plaintiff wilfully refused to deliver said wheat or any part thereof to defendant as agreed; that thereupon, in order to induce plaintiff to comply with said agreement without suit, the said defendant consented to the modification of said agreement by agreeing to give the said plaintiff the sum of sixty-eight cents per bushel instead of sixty-four cents per bushel as per said original agreement." Defendant admits the delivery by plaintiff of 1142½ bushels, but alleges "that plaintiff failed and refused to deliver the balance of said 3000 bushels as per said agreement. . . . That owing to the failure of plaintiff to comply with his said contract and deliver the full quantity of wheat as agreed, defendant was compelled to pay the sum of eighty-three cents per bushel for said deficiency to make up and fulfill his contract" which he entered into for the sale of the wheat to another party, to his damage in the sum of $278.

Plaintiff filed a reply to defendant's answer and counterclaim and, among other things, alleged: "That at the time when the contract mentioned in defendant's counterclaim was entered into plaintiff had not threshed his grain, and at said time stated that he would probably have 3000 bushels of wheat, and agreed with defendant that he would sell all his wheat to him whatever the quantity might be. . . . That about the 1st day of October, 1907, defendant entered into the contract set forth in plaintiff's complaint, but said contract was not intended as a modification of the former agreement, and was different in all its terms except as to place of delivery of the said wheat and was understood by both parties thereto as an entirely new contract in which plaintiff only agreed to sell the amount of wheat he had on hand at said time."

On these issues the court found as follows: (3) "That on or about the 10th day of October, 1907, plaintiff and de-

fendant agreed upon a modification of the contract made
and entered into by them as aforesaid, whereby the plaintiff,
by the terms of the said contract as modified and changed,
agreed to sell and deliver to the defendant so much of his
said crop of wheat as he, the said plaintiff, could spare."
(4) "That plaintiff . . . did, pursuant to the terms of
said contract as modified and changed, sell and deliver to
defendant, 1142½ bushels of wheat at the place and in the
manner as agreed upon as aforesaid and in all respects per-
form all of the conditions and covenants agreed by him to be
performed pursuant to the terms of said contract as modi-
fied." Defendant contends that that part of the third find-
ing of fact, wherein the court finds that "plaintiff agreed
to sell and deliver to defendant so much of his said crop
of wheat as he, the said plaintiff, could spare," is outside
of the issues made by the pleadings, and that the fourth
finding, wherein it recites that "plaintiff in all respects per-
formed all of the conditions and covenants agreed by him
to be performed pursuant to the terms of the said contract
as modified," is not only unsupported by, but is contrary to,
the evidence.

In his counterclaim defendant pleaded and relied upon
the contract as first entered into between himself and plain-
tiff, which, he alleges, was modified so as to increase the
price he was to pay for the plaintiff's grain, but not other-
wise. On the other hand, plaintiff, in his reply to defend-
ant's counterclaim, alleged that "an entirely new agreement"
was entered into "in which plaintiff only agreed to sell the
amount of wheat he actually had on hand at the time." It
will thus be seen that the pleadings represented the question,
namely, was the contract modified as alleged by defendant,
or was a new contract entered into "in which plaintiff agreed
to sell the amount of wheat he actually had on hand at said
time," as pleaded by plaintiff? Now, the court, instead of
making a finding responsive to and within this issue, found
that a contract entirely different from either the contract
pleaded by plaintiff or that pleaded by defendant had been
entered into by the parties. The finding being entirely out-

side of the issues is therefore erroneous and cannot be upheld. Nor can the finding of the court that plaintiff fully performed his part of the contract be upheld. Under the contract pleaded by plaintiff in his reply to defendant's counterclaim, he obligated himself to sell and deliver to defendant the "amount of wheat he actually had on hand," and the undisputed evidence shows that he had on hand at the time he made this alleged new contract 2163 bushels, and it is admitted that he delivered only 1142½ bushels. After the 1142½ bushels were delivered, there was some correspondence had between the parties respecting an alleged balance due plaintiff for his wheat. It is claimed by counsel in his brief, if we correctly understand his position, that this correspondence, when considered in connection with other facts, shows that defendant waived performance of the contract as to the amount of wheat to be delivered. Plaintiff's case was not predicated upon any claim or theory of waiver. To the contrary it was predicated upon the theory that he had complied with all the terms of his contract. Waiver was not pleaded, and hence was not an issue in the case. It is therefore unnecessary for us to reproduce or review any of the correspondence mentioned or to further refer to it.

The judgment is reversed, with directions to the lower court to grant a new trial. The costs of this appeal to be taxed against respondent.

STRAUP, C. J., and FRICK, J., concur.